# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MARK WIGHTMAN, et al.**　　　　　　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　　**NO. 23-760-SDD-SDJ**

**LOUISIANA HEALTH SERVICES
AND INDEMNITY CO., et al.**

## **NOTICE**

　　Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

　　In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations **within 14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

　　**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

　　Signed in Baton Rouge, Louisiana, on March 10, 2025.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Scott D. Johnson*
　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**SCOTT D. JOHNSON
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARK WIGHTMAN, et al.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-760-SDD-SDJ** |
| **LOUISIANA HEALTH SERVICES AND INDEMNITY CO., et al.** | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion entitled Plaintiffs' Opposed Omnibus Motion Requesting that Judicial Notice be Taken and for *Sua Sponte* Remand (R. Doc. 7) filed by Plaintiffs Mark Wightman, D.D.S.; Courtney Wightman, D.D.S.; and Wightman Family Dental, L.L.C. Despite the moniker of the Motion, no opposition has been filed, and the deadline for doing so has long passed. As such, the Court considers the Motion unopposed.[1] The Court initially ruled on this Motion in a prior Report and Recommendation (R. Doc. 12) issued on September 4, 2024. Following an objection to same by Defendants, the District Judge declined to adopt the Report and Recommendation and referred the Motion back to the undersigned for a reexamination of Plaintiffs' Motion.[2] The Court has taken into account all arguments of the Parties, including, specifically, Defendants' Objection to the prior Report and Recommendation. For the reasons set forth below, the Court recommends that Plaintiffs' Motion be **granted in part** and that this matter be **remanded** to state court.

---

[1] As asserted by Plaintiffs in their Motion, after Plaintiffs' counsel informed opposing counsel that this Motion would be filed, opposing counsel did not ever state their opinion. R. Doc. 7 at 8, 14. Plaintiffs then state that they assume BCBSLA "will file a response," which is why they indicated this Motion as "opposed" in the title. *Id.* However, Defendants did not file an opposition or other response to Plaintiffs' Motion. As such, this Motion is considered unopposed by the Court.

[2] R. Docs. 13, 14.

I.      BACKGROUND

On or about June 4, 2019, Plaintiffs Mark Wightman, DDS, and Wightman Family Dental, LLC, filed suit against Defendants Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA"), and HMO Louisiana, Inc., in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, alleging Defendants were not reimbursing Plaintiffs at the proper rate.[3]  In response, on June 7, 2019, Defendants herein filed a Petition for Declaratory Judgment Against Defendant Class in the 19th JDC against the Louisiana Dental Association, Inc.; its Board of Directors; Mark Wightman, DDS; Courtney Wightman, DDS; and Wightman Family Dental, LLC.[4]  Defendants also requested that the matter be certified as a defendant class action.[5]

Subsequently, on or about May 28, 2020, Plaintiffs filed a First Supplemental and Amending Petition in their state court action, which, *inter alia*, named Courtney Wightman, DDS, as a Plaintiff in the litigation and brought class allegations against Defendants.[6]  At that same time, Plaintiff also filed a Motion to Certify Class Action.[7]  No state court ruling on the Motion to Certify Class has been provided.

On July 19, 2023, Plaintiffs filed a Motion to Consolidate in state court, seeking to consolidate their case with the case filed shortly thereafter by Defendants.[8]  There is no indication in the record that this Motion was ever ruled on in state court.  Based on the Motion to Consolidate, on August 18, 2023, Defendants filed a Notice of Removal seeking to remove both this case as well as the declaratory judgment action filed by Defendants to federal court pursuant to the Class

---

[3] R. Doc. 1-4.
[4] R. Doc. 1-6.
[5] *Id.* at 14.
[6] R. Docs. 1-5, 1-8.
[7] R. Doc. 1-11 at 1-19.
[8] R. Doc. 1-10.

Action Fairness Act, 28 U.S.C. § 1332(d)(11).[9] Following removal, Plaintiffs filed the instant Motion (R. Doc. 7). The undersigned, on September 4, 2024, issued a Report and Recommendation recommending that Plaintiffs' Motion be granted in part and this case remanded to state court.[10] Although Defendants did not oppose Plaintiffs' Motion, they filed an objection to the Report and Recommendation, arguing that certain Fifth Circuit case law had not been considered in the Court's decision.[11] On September 30, 2024, the District Judge issued a Ruling declining to adopt the Report and Recommendation and referring Plaintiff's Motion back to the undersigned to consider the arguments raised in Defendants' Objection.[12]

## II.   LAW AND ANALYSIS

### A.   Preliminary Note on Plaintiffs' Motion

At the outset, the Court notes and attempts to rectify some unusual qualities of Plaintiffs' Motion. As stated above, Plaintiffs titled their Motion Opposed Omnibus Motion Requesting that Judicial Notice be Taken and for *Sua Sponte* Remand. It essentially is divided into two motions, the first of which is an Opposed Motion Requesting that Judicial Notice be Taken.[13] In this first part, Plaintiffs list 33 purported "adjudicative facts" of which they ask the Court to take judicial notice, primarily relating to the proceedings in state court and assertions related to Defendants' Notice of Removal.[14]

In the second part of the Motion, titled "Opposed Motion for *Sua Sponte* Remand," Plaintiffs ask the Court "for an Order of *Sua Sponte* Remand," noting that a district court shall remand a case at any time when it discovers that it lacks subject matter jurisdiction.[15] While the

---

[9] R. Doc. 1 at 1.
[10] R. Doc. 12.
[11] R. Doc. 13.
[12] R. Doc. 14.
[13] R. Doc. 7 at 1.
[14] *Id.* at 1-8.
[15] *Id.* at 10, citing 28 U.S.C. § 1447(c).

Court agrees with the accuracy of this statement, it is confused as to why Plaintiffs have asked the Court for a *sua sponte* remand as opposed to simply seeking remand, given that they argue for remand in their Motion. As the content, rather than the title, of a pleading is controlling, the Court will interpret Plaintiffs' Motion as a Motion to Remand. *See Grimes v. Lumpkin*, No. 22-12, 2022 WL 22606914, at *1 n.1 (S.D. Tex. Apr. 22, 2022). The Court addresses both parts of Plaintiffs' Motion, in turn, below.

### B.    Plaintiffs' Request for Judicial Notice

Federal Rule of Evidence 201 allows a court to take judicial notice of any adjudicative fact that is "not subject to reasonable dispute" in that it is either (1) generally known within the trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. F.R.E. 201(b). "Whether to take judicial notice of such facts is generally within the discretion of the trial court." *Gisclair v. Galliano Marine Svc.*, No. 05-5223, 2007 WL 1238902, at *2 (E.D. La. Apr. 25, 2007) (citing F.R.E. 201(c)). "When, however, a party requests that the Court take judicial notice and supplies the court with the necessary information, the court must take judicial notice." *Id.* (citing F.R.E. 201(d)).

"Courts generally may not take judicial notice of factual findings from other proceedings as probative of the underlying truth of the facts at issue in the other proceedings." *Id.* (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998)). "Only when the finding of fact is 'the type of self-evident truth that no reasonable person could question, a truism that approaches platitude or banality,' can a court take judicial notice of the underlying facts themselves." *Id.* (quoting *Taylor*, 162 F.3d at 830). "Otherwise, a court can take judicial notice of such documents

only to prove the fact of the proceeding itself." *Id.* As explained in further detail by the Fifth Circuit:

> Judicial notice may be taken of facts known at once with certainty by all the reasonably intelligent people in the community without the need of resorting to any evidential data at all…. Specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be judicially noticed.

*Weaver v. United States*, 298 F.2d 496, 498-99 (5th Cir. 1962) (citation omitted). "Under Rule 201, a court may *not* take notice of legal determinations." *Hall v. Louisiana*, No. 12-657, 2015 WL 1383532, at *1 (Mar. 23, 2015) (citing *Taylor*, 162 F.3d at 831) (emphasis in original).

Turning to Plaintiffs' Motion, the Court declines to take judicial notice of purported facts 1-5, as they are statements of law rather than adjudicative facts and are not subject to judicial notice. The remainder of Plaintiffs' purported facts, 6-33, contain references to and/or characterizations of pleadings filed in either in this Court or in the underlying state court proceedings. The Court acknowledges the attached documents and, having received no opposition or objection from Defendants, will adopt the characterizations of same in its analysis of whether this Court has jurisdiction over this matter pursuant to CAFA. However, to the extent the purported facts involve either such interpretations and characterizations or legal conclusions and inferences, the Court declines to take judicial notice. To be clear, while the Court declines to take judicial notice of the proffered facts, other than to the extent of acknowledging the existence of the referenced documents, all of which are part of the Court record, it has carefully considered each of the referenced documents in analyzing CAFA jurisdiction, as discussed in detail below.

## C. Whether Removal was Proper

### 1. Removal Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Subject matter

jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Generally, the removing party has the burden of showing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removal statute is strictly construed, and any doubt as to the propriety of removal should be resolved in favor of remand. *Id*. Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

### 2. Diversity Jurisdiction Under CAFA

Here, Defendants removed this matter as a mass action pursuant to 28 U.S.C. § 1332(d)(11), which jurisdiction they claim was triggered by the Plaintiffs' filing of their Motion to Consolidate in state court.[16] "According to CAFA's plain text, a 'mass action' must involve monetary claims brought by 100 or more persons who propose to try those claims jointly as named plaintiffs." *Addison v. La. Reg'l Landfill Co.*, 398 F.Supp.3d 4, 10 (E.D. La. 2019) (quoting *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 164 (2014)). "The legislative history accompanying CAFA states, 'it is the Committee's intent that the exceptions to this provision be interpreted strictly by federal courts.'" *Id.* (quoting S. REP. No. 109-14, at 47 (2005)).

For the Court to exercise jurisdiction over this action pursuant to CAFA's mass action provision, the action must meet the requirements of 28 U.S.C. § 1332(d)(2)-(10). 28 U.S.C. § 1332(d)(11)(A) ("For purposes of this subsection … a mass action shall be deemed to be a class action removable under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs."). "This means it must: '(1) satisfy CAFA's minimal diversity requirement (i.e., at least one plaintiff and one defendant must be citizens of different states); (2) have an amount in

---

[16] R. Doc. 1 at 5.

controversy exceeding $5,000,000; [] (3) involve claims of monetary relief of at least 100 persons that involve common questions of law or fact[;]' and (4) 'at least one plaintiff must satisfy the individual amount in controversy requirement' of $75,000." *Addison*, 398 F.Supp.3d at 10 (quoting *Greco v. Jones*, 992 F.Supp.2d 693, 695 (N.D. Tex. 2014); *Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 86 (5th Cir. 2013)). The Removing Defendants bear the burden of showing that these requirements have been met. *Id.* (citing *Hood ex rel. Miss.*, 737 F.3d at 86).

However, the statute also establishes certain exceptions to CAFA jurisdiction that Plaintiffs, in their Motion to Remand, argue are applicable here, specifically, the "local controversy" exception, the "home state" exception, and the interests of justice exception. However, "CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction." *Dozier v. GoAuto Ins. Co.*, No. 19-1223, 2020 WL 5755175, at *2 (W.D. La. Sep. 24, 2020) (quoting *Joseph v. Unitrin, Inc.*, No. 08-077, 2008 WL 3822938, at *4 (E.D. Tex. Aug. 12, 2008)). "Accordingly, only after the removing defendant has established jurisdiction under CAFA does the burden shift to the party seeking remand to prove by a preponderance of the evidence that an exception to CAFA jurisdiction applies." *Id.* (citing *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc. ("Preston II")*, 485 F.3d 804, 813 (5th Cir. 2007)) ("once federal jurisdiction has been established under [CAFA], the objecting party bears the burden of proof as to the applicability of any express statutory exception").

      **a.    Whether the Removing Defendants have established jurisdiction under CAFA**

The Court turns first to whether Defendants have established jurisdiction under CAFA. *See Dixon v. D.R. Horton, Inc. – Gulf Coast*, 695 F.Supp.3d 739, 744 (M.D. La. 2023) (finding defendant carried its burden to establish CAFA jurisdiction before analyzing whether exceptions

to same applied). At the outset, the Court notes that Plaintiffs, in their Motion to Remand, argue generally that "BCBSLA has not proven that CAFA provides this Court with jurisdiction over either the removed First Filed Case or the Second Filed Case still pending in state court."[17] However, Plaintiffs' arguments focus on the applicability of exceptions to CAFA jurisdiction, rather than on Defendants' failure to establish all elements of CAFA jurisdiction. Thus, Defendants' arguments regarding the individual elements of CAFA jurisdiction are effectively unopposed.

### i. Whether CAFA's minimal diversity requirement is met

According to 28 U.S.C. § 1332(d)(2)(A), CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." Here, there is no dispute that the named Plaintiffs—Mark Wightman, Courtney Wightman, and Wightman Family Dental—are all Louisiana citizens, and Defendants—BCBSLA and HMO Louisiana, Inc.—also both are Louisiana citizens.[18] However, as noted by Defendants, "Plaintiffs' class contemplates inclusion of 'Louisiana dental health care providers … currently and/or formerly residing in the State of Louisiana during the relevant period[,]' and thus seems to expressly envision providers residing out of state who may also be domiciled out of state."[19] This is bolstered by Defendants' assertion that, in reference to its declaratory action, "[a]mong that 1,008 dental providers to whom BCBSLA issued checks on February 8, 2019," 134 providers were located in a state other than Louisiana.[20] As the minimal diversity requirement requires only that a single member of the proposed plaintiff class be a citizen of a state other than Louisiana, the Court finds this requirement satisfied based on the information provided.

---

[17] R. Doc. 7 at 13 ¶ 18.
[18] R. Doc. 1 at 3-4.
[19] R. Doc. 1 at 10 ¶ 44.
[20] R. Doc. 1 at 10 ¶ 42.

       **ii.**  **Whether CAFA's amount in controversy requirement is met**

  Here, Plaintiffs seek "repayment of all underpayments, fair market value for all services performed and rendered, for mental anguish, emotional distress, worry and concern caused by wrongful reimbursement practices, loss of profits or use, out-of-pocket expenses, as well as all other damages allowed by law, along with attorney's fees, costs, and expenses allowed by law."[21] As noted by Defendants, Plaintiffs, in their Motion to Certify Class and supporting memorandum, argue that Defendants have admitted to underpayments with respect to some benefit cards, "result[ing] in over $300,000 in underpayments."[22] Plaintiffs continue that, for each violation, Defendants are liable for penalty payments "per claim for each year of non-compliance" in the amount of $18,250.[23] One such penalty payment on behalf of 1,500 proposed class members would more than satisfy the $5 Million amount in controversy requirement. As such, this requirement also is met.

       **iii.**  **Whether claims involve common questions of law or fact for at least 100 persons**

  As noted by Defendants in their Amended Complaint, in which they bring class allegations, Plaintiffs express their belief that the number of individuals in the proposed Plaintiff class "exceeds 1500 individuals."[24] This number is far in excess of the 100 persons required for CAFA jurisdiction, and the Court finds this requirement satisfied.

       **iv.**  **Whether at least one Plaintiff satisfies the amount-in-controversy**

  Defendants argue that this requirement is met "based on the allegations of Mark Wightman alone" as "he is due several years of damages at the rate of $18,250, plus attorney fees, which also

---

[21] R. Doc. 1-5 at 8-9 ¶ 37.
[22] R. Doc. 1-11 at 5.
[23] *Id.*
[24] R. Doc. 1-5 at 3 ¶ 11.

exceeds the $75,000 threshold."[25]  The Court agrees.  In their Amended Complaint, Plaintiffs allege that the relevant time period is from January 1, 2008, to the present.[26]  Plaintiffs also allege that "Petitioners," which includes Mark Wightman, had an arrangement for PPO "[a]t all times material" and that in 2018, over six years ago, Petitioners submitted a complaint to the Louisiana Department of Insurance concerning the allegations they raise in this lawsuit.[27]  Five years of this asserted penalty rate alone, without considering attorney's fees, is sufficient to meet the single plaintiff amount-in-controversy requirement.  Plaintiffs allege wrongdoing for far more than five years in their Amended Complaint.  As such, this requirement also is satisfied.

### b.    Whether CAFA's "local controversy" exception applies

Having found jurisdiction under CAFA established, the Court turns to whether any of the exceptions to CAFA jurisdiction are applicable here.  The CAFA statute includes certain mandatory abstention provisions "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state."  *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (quoting *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 682 (7th Cir. 2006)).  "[T]he party objecting to CAFA jurisdiction must prove that the CAFA exceptions to federal jurisdiction divests the district court of subject matter jurisdiction."  *Id.* at 571 (citing *Preston II*, 485 F.3d at 813-14).

The "local controversy" exception, set forth in 28 U.S.C. § 1332(d)(4)(A) mandates that a district court "shall decline to exercise jurisdiction":

(A)(i)  over a class action in which—

---

[25] R. Doc. 1 at 12 ¶ 53.
[26] R. Doc. 1-5 at 3 ¶ 10.
[27] *Id.* at 5-6 ¶¶ 21, 23.

    (I)    greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

    (II)    at least 1 defendant is a defendant—

        (aa)    from whom significant relief is sought by members of the plaintiff class;

        (bb)    whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

        (cc)    who is a citizen of the State in which the action was originally filed; and

    (III)    principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

    (ii)    during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A). "Congress crafted CAFA to exclude only a narrow category of truly localized controversies, and the exceptions provide a statutory vehicle for the district courts to ferret out the controversy that uniquely affects a particular locality to the exclusion of all others." *Hollinger*, 654 F.3d at 570 (quoting *"Preston II*, 485 F.3d at 823).

### i. Whether two-thirds of class members are Louisiana citizens

First, greater than two-thirds of the members of the proposed plaintiff class are citizens of Louisiana. In their Amended Complaint, Plaintiffs bring claims on behalf of a plaintiff class defined as follows:

> All Louisiana dental health care providers under Louisiana Title 40 … currently and/or formerly residing in the State of Louisiana during the relevant time period:
>
> (1) Who had one or more arrangements for PPO's … with Louisiana Health Service and Indemnity Company, Inc., d/b/a Blue Cross Blue Shield of Louisiana/BCBSLA, and/or HMO Louisiana, Inc. who are Group

> Purchasers … to provide services to their members in exchange for contracted rates of payment … by Group Purchasers; and
>
> (2) Who were instead paid alternative rates for services rendered by Group Purchasers, in violation of LA R.S. 40:2203.1.[28]

"Citizenship for purposes of the local controversy exception mirror citizenship for purposes of diversity—it is a party's 'domicile.'" *Dixon*, 695 F.Supp. 3d at 747 (quoting *Dozier*, 2022 WL 1226918, at *4). Plaintiffs themselves are Louisiana domiciliaries and seek to represent a discrete class of Louisiana dental health care providers who contracted with a specific Louisiana insurer and subsequently were underpaid in violation of Louisiana state law.

In support of its position, Plaintiffs reference Defendants' Petition for Declaratory Judgment Against Defendant Class, the second-filed suit, arguing that BCBSLA has "conceded" that more than two-thirds of the proposed class are Louisiana citizens.[29] That pleading, which Defendants attached to their Notice of Removal, discusses the members of the proposed Defendant declaratory class, which proposed class is defined as "[a]ll dentists who provided services to BCBSLA and HMOLA members in Louisiana in the period from January 1, 2014 to the present who submitted … a dental claim for payment to network partner UCD."[30] As characterized by Defendants, "[t]his lawsuit, like the Initial Suit, includ[es] allegations seeking to certify a class consisting of dental providers similarly situated to Plaintiffs, and with similar monetary claims against BCBSLA."[31] Said suit was filed in response to Plaintiffs' suit, and Defendants seek to name Plaintiffs as class representatives for the defendant class, similar to Plaintiffs also serving as class representatives for the proposed plaintiff class.[32] Moreover, Plaintiffs, in seeking consolidation of the cases, claim that "[t]he allegations in the two lawsuits are similar and the

---

[28] R. Doc. 1-5 at 3 ¶ 9.
[29] R. Doc. 7-8 at 26.
[30] R. Doc. 1-6 at 14 ¶ 77.
[31] R. Doc. 13-1 at 2.
[32] R. Doc. 1-6 at 15 ¶ 80.

issues to be determined overlap or, in some cases, are identical," and that "[b]ut for the Louisiana Dental Association …, the parties are also the same."[33] There is no indication in the record that Defendants opposed Plaintiffs' Motion to Consolidate in any way, with said Motion forming the basis for Defendants' removal of this proceeding. Thus, to the Court, the plaintiff class in the first-filed suit and the defendant class in the second-filed suit appear substantially similar.

With regard to the defendant class, Defendants state that "[a]mong that 1,008 dental providers to whom BCBSLA issued checks on February 8, 2019," 134 providers were located in a state other than Louisiana, and 70 providers "could not be located … because they were no longer in UCD's networks, had moved or closed offices, or were deceased."[34] Removing both the out-of-state providers as well as the providers who could not be located, more than two-thirds of 1,008 providers remain. While this reflects payments on only a single day, it is presented as indicative of the makeup of the class as a whole. In addition, Annette Droddy, Executive Director for the Louisiana Dental Association, whose Declaration is attached to Plaintiffs' Motion, attests that the Louisiana Dental Association "is a voluntary professional association for dentists who are licensed to practice dentistry in the State of Louisiana" and "currently has 1,556 active Members."[35] Droddy continues that "100% of [the] LDA Members are domiciled in and practice in the State of Louisiana."[36] Plaintiffs also argue that the fact that over two-thirds of the proposed plaintiff class are Louisiana citizens is bolstered by the fact that "BCBSLA is a licensed domestic mutual insurer by the Louisiana Department of Insurance that issued the policies at issue in the State of Louisiana."[37]

---

[33] R. Doc. 1-10 at 2.
[34] R. Doc. 1 at 9-10 ¶¶ 41-42.
[35] R. Doc. 7-6 at 1 ¶ 2.
[36] *Id.* at 2 ¶ 4.
[37] R. Doc. 7-8 at 27.

With regard to a party's domicile, "[t]here is a presumption in favor of … continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect." *Dixon*, 695 F.Supp. 3d at 747-48 (quoting *Preston II*, 485 F.3d at 819). "This presumption is applied with regularity to determine whether the Local Controversy Exception is met." *Id.* Defendants offer no evidence to rebut this presumption, and, as such, Plaintiff are entitled to rely on it. *See id.*; *see also Dozier*, 2022 WL 1226918, at *8 ("Plaintiff is entitled to rely on the continuing domicile presumption because GoAuto has not come forward with evidence that rebuts that presumption."); *Kitson v. Bank of Edwardsville*, No. 06-528, 2006 WL 3392752 (S.D. Ill. Nov. 22, 2006) (holding that evidence of the putative class members' residence creates a rebuttable presumption, and if not contested by the opposing party, then residency demonstrates citizenship for CAFA jurisdictional purposes).

"Under CAFA, a party seeking remand on the basis of one of the exceptions bears the burden of proving the existence of an exception by a preponderance of the evidence." *Dozier*, 2020 WL 5755175, at *2 (citing *Rainbow Gun Club, Inc. v. Denbury Onshore, L.L.C.*, 760 F.3d 405, 409 n. 3 (5th Cir. 2014)). To meet the preponderance of evidence standard, Plaintiffs need only show "that the existence of a fact is more likely so than not." *Reed v. LKQ Corp.*, 436 F.Supp.3d 892, 898 n. 1 (N.D. Tex. 2020) (quoting *Herman & MacLean v. Huddleston*, 459, U.S. 375, 390 (1983)). "Thus, to prove a fact or claim by a preponderance of the evidence, a party must prove that it is more likely than not that its version of the facts is true." *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F.Supp.3d 363, 384 n. 9 (N.D. Tex. 2016) (citing *Herman & MacLean*, 459 U.S. at 390).

The evidence presented by Plaintiffs shows that it is more likely than not that the proposed class of Louisiana dental health care providers who had arrangements with BCBSLA, a Louisiana

insurer, and whose payments allegedly violated a Louisiana statute, are Louisiana citizens. Moreover, in light of Defendants' failure to oppose Plaintiffs' Motion, no evidence or argument that Plaintiffs' version of the facts—i.e., that more than two-thirds of the plaintiff class members are Louisiana citizens—has been presented to the Court. Here, "judicial experience, common sense, the available evidence, and the unrebutted presumptions coalesce, and the Court funds that Plaintiffs have carried their burden to show that greater than two-thirds of the members of the proposed class are Louisiana citizens." *Dixon*, 695 F.Supp.3d at 748. The Court finds this requirement has been met.

### ii. Whether at least one Defendant is a significant local Defendant

Second, the "local controversy" exception requires the presence of at least one "significant" defendant be a citizen of Louisiana. To meet this burden, Plaintiffs must show (1) that the class seeks "significant relief" from the in-state Defendant, (2) whose conduct is a "significant basis" of their claims. *Dixon*, 695 F.Supp.3d at 748 (citing *State of Louisiana v. 13 Verticals Inc.*, 81 F.4th 483, 488-89 (5th Cir. 2023)). No one disputes that both Defendants—BCBSLA and HMO Louisiana, Inc.—are Louisiana citizens. As such, regardless of which one is the "significant" defendant, this requirement also is met.

### iii. Whether the principal injuries were incurred in Louisiana

Third, it is clear from the pleadings that the principal injuries—damages resulting from violation of a Louisiana statute by a Louisiana insurer resulting in underpayments to Louisiana dentists—occurred in Louisiana. In fact, there is no indication that any of the activity at issue in this case occurred outside of Louisiana. This requirement, too, is satisfied.

### iv. Whether similar class actions have been filed in the previous three years

Finally, record evidence indicates that during the three-year period prior to the filing of the class action, no other class action has been filed asserting the same or similar factual allegations against any of the Defendants on behalf of the same or other persons. According to Droddy, "[a]s Executive Director of the LDA, part of [her] job responsibilities includes the monitoring of litigation and/or potential litigation in coordination with the LDA's outside Legal Counsel," and "[i]n that capacity, [she is] not personally aware of other lawsuits that involve the LDA that are similar or identical to the Wightman lawsuit."[38] Defendants' failure to identify any such class action further supports the Court's finding that this requirement also is met.

As set forth above, the Court finds that Plaintiffs have proved each of the elements of the "local controversy" exception by a preponderance of the evidence. *See Stewart v. Entergy Corp.*, 35 F.4th 930, 932 (5th Cir. 2022) ("The party seeking remand bears the burden of establishing, by a preponderance of the evidence, that the local controversy … requirements are met."). Moreover, Defendants did not file an Opposition or other response to Plaintiff's Motion, meaning the evidence is uncontroverted. As such, the Court finds that because the mandatory "local controversy" exception applies, this Court must decline to exercise jurisdiction over this case and necessarily recommends that it be remanded to state court. In fact, to the Court, this case appears to be a perfect example of a local controversy CAFA specifically envisioned being tried in state court—Plaintiff class members and Defendants are Louisiana citizens; the actions and resulting injuries occurred in Louisiana; and the underlying question is one of Louisiana state law.

---

[38] R. Doc. 7-6 at 2-3 ¶ 7.

### c. Whether CAFA's "home state" exception applies

Like the "local controversy" exception, CAFA's "home state" exception also is a mandatory exception. Found at 28 U.S.C. § 1332(d)(4)(B), it mandates that a district court "shall decline to exercise jurisdiction" over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Here, there is only a single proposed plaintiff class, and as discussed in detail above, a preponderance of the evidence indicates that two-thirds or more of its members are Louisiana citizens. Both Defendants are Louisiana citizens, and this action originally was filed in Louisiana state court. As such, all requirements of the "home state" exception also are met, and this Court must decline to exercise jurisdiction over this case.[39]

### D. Plaintiffs' Request for Fees

Finally, Plaintiffs argue that "[b]ecause BCBSLA's removal lacks candor, fails to disclose material facts regarding the status of the underlying suit and BCBSLA's ongoing effort to maintain and litigate an identical cause of action secondary to the Wightman's First Filed Case, thus requiring duplicative legal efforts and fees, this Court should award the Wightmans' fees for researching, briefing, and opposing this removal."[40]

"An order remanding the case may require payment of just costs and actual expenses, including attorney's fees, incurred as a result of removal." *Jacobs v. Audubon Home Health of Baton Rouge, Inc.*, No. 18-59, 2018 WL 3946555, at *4 (M.D. La. Jul. 12, 2018) (quoting 28 U.S.C. § 1447(c)). "An award of costs and expenses under § 1447(c) is discretionary and shall

---

[39] The Court notes that Plaintiffs also argue that the discretionary "interests of justice" exception set forth in 28 U.S.C. § 1332(d)(3) also applies here. However, finding that the mandatory "local controversy" and "home state" exceptions apply, the Court need not address the applicability of the discretionary exception here.
[40] R. Doc. 7 at 14.

only be awarded where the removing party 'lacked an objectively reasonable basis for seeking removal.'" *Id.* (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)).

Here, Plaintiffs provide no information as to the amount of any fees and costs incurred in connection with Defendants' removal of this case. Moreover, Defendants were able to establish general federal jurisdiction over this case pursuant to CAFA; it was only the application of exceptions to same that necessitate the instant recommendation of remand. As such, the Court recommends that Plaintiffs' request for costs and fees be denied.

### III. RECOMMENDATION

Because this Court must decline to exercise jurisdiction over this case pursuant to 28 U.S.C. § 1332 (d)(4)(A) and (B),

**IT IS RECOMMENDED** that Plaintiffs' Opposed Omnibus Motion Requesting that Judicial Notice be Taken and for *Sua Sponte* Remand (R. Doc. 7) be **GRANTED IN PART** and that this matter be **remanded** to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

Signed in Baton Rouge, Louisiana, on March 10, 2025.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**